Filed 6/29/22  P. v. James CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JON A. JAMES,<br><br>    Defendant and Appellant. | C093862, C093863<br><br>(Super. Ct. Nos. 19FE018277,<br>  19FE009012) |

On May 1, 2019, defendant Jon A. James broke into an occupied home, ate a frozen dinner, drank a beer, and took items from the home before leaving.  Defendant reports as bipolar and not taking his medication at the time of the incident.  Following a jury trial, defendant was convicted of first degree burglary while a person was present in the residence (Pen. Code, §§ 459, 667.5, subd. (c)(21))[1] in Sacramento County case No. 19FE018277 (case No. 19FE018277).

_____

[1]    Undesignated statutory references are to the Penal Code.

1

On May 21, 2019, defendant broke into a residence and took a passport, a patio misting system, and other items. Following a jury trial, defendant was convicted of first degree burglary (§ 459) in Sacramento County case No. 19FE009012 (case No. 19FE009012). Sentencing defendant in both cases, the trial court imposed a seven year four month state prison term.

In this consolidated appeal, defendant contends the trial court prejudicially erred in both cases by failing to consider his eligibility for section 1001.36 mental health diversion, and that trial counsel's failure to raise section 1001.36 eligibility in either case constituted ineffective assistance of counsel. As to case No. 19FE018277, defendant claims the trial court deprived him of due process by preventing him from testifying about his mental health, and the court did not specify the ground for imposing the upper term. In his appeal from case No. 19FE009012, defendant claims the trial court improperly pressured him into waiving his right to testify. He also claims certain fines, fees, and assessments in both cases were imposed without a hearing on his ability to pay, contrary to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

The trial court has no sua sponte duty to inquire into a defendant's eligibility for section 1001.36 mental health diversion. Trial counsel's failure to raise the section 1001.36 issue in both cases forfeits the contention, and the record here does not support the claim of ineffective assistance of counsel in either case. It was within the trial court's discretion to exclude defendant's mental health testimony; the exclusion was also harmless under any harmless error standard. The trial court's exchange with defendant about his decision on testifying did not pressure him into waiving the right but was instead a reasonable effort to conduct the trial in an orderly manner. Finding recent legislation requires a remand for resentencing, we shall remand for resentencing, decline to address the *Dueñas* issue, and otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I

*Case No. 19FE018277*

A

*Prosecution Case*

On May 1, 2019, 93-year-old Victor S. woke up to find someone had entered his home and took several items, including a leather jacket. An opened can of beer was left behind and one of his frozen dinners had been partially eaten. The screen door in the back of the home had its plexiglass broken and the wire mesh ripped. Defendant's DNA was found on the lip of a beer can and on a fork in the home.

Evidence of two other incidents was admitted as uncharged misconduct. On July 29, 2017, defendant broke into a church, breaking a door and damaging a vent. Defendant took camera equipment and other items from the church. He told the Sacramento police he was homeless and broke in and took the items so he could sell them. He was convicted of second degree burglary as a result of this incident. Evidence of the incident leading to defendant's first degree burglary conviction in case No. 19FE009012 was admitted as the second uncharged misconduct incident.

B

*Defense*

Testifying on his own behalf, defendant said that in April 2019 he was homeless and living in a tent in a field. He started looking for a new place to stay after a storm. A homeless woman took defendant to a house that she said was abandoned but had food. The exterior and interior of the house looked neglected and in disarray; he went inside thinking it was abandoned. Defendant microwaved food he found in the freezer and took a drink of a beer from the refrigerator, but both were stale. After seeing stacks of televisions in one room, defendant got "spooked" and left the home, thinking another

3

homeless person had already claimed it. Defendant did not go into the house to take property and took nothing from it when he left.

With respect to the prior misconduct, defendant admitted breaking into the church and taking items to get food and money. Regarding the incident in case No. 19FE009012, defendant thought the property was abandoned when he entered, but admitted knowing it was not abandoned once he got inside. He also admitted to taking property from the home.

II

*Case No. 19FE009012*

On May 21, 2019, San Jose Police Detective Hans Jorgenson was conducting surveillance in midtown Sacramento. At around 12:17 p.m., he saw defendant, who was holding a can of beer, knock on the front door and look through the windows of a nearby house. After waiting 10 to 15 seconds, defendant went back to the sidewalk and started walking. At 12:30 p.m., defendant returned to the house and walked up the driveway, whereupon Detective Jorgenson lost sight of him.

At 12:32 p.m., Kayla White, who lived in an apartment next door to the home, called 911 to report a break in. When White heard trash cans "wrestling" and a fence being broken, she looked out the window and saw a man holding a tall beer can in the backyard of the house. The man ripped the screen door open, threw something heavy like a brick or rock through the back door, and walked into the house. Another neighbor called 911 after hearing a loud crash like broken glass and looking out the window to see a man entering the home through the back door.

After losing sight of defendant for a few minutes, Detective Jorgenson saw him walk out of the house through the front door, carrying a bag and a box. Detective Jorgenson reported this suspected burglary to his teammates and notified his sergeant to call the Sacramento Police. He sent photos he had taken of defendant to another officer.

4

That officer eventually found defendant, who was holding a bag and a box. The bag had a passport and jewelry inside, while the box contained a water mister.

A resident of the house returned to find broken glass and a brick on the kitchen floor. Among items taken from her home were her passport, jewelry, and a patio misting system she got the day before.

Defendant did not testify in this case.

DISCUSSION

I

*Section 1001.36 Diversion*

Defendant's primary contention in both cases is the same, that the trial court erred in failing to consider his eligibility for mental health diversion under section 1001.36.

Section 1001.36 "gives trial courts the discretion to grant pretrial diversion for individuals suffering from certain mental health disorders. (§ 1001.36, subd. (a).)" (*People v. Frahs* (2020) 9 Cal.5th 618, 626 (*Frahs*).)

"If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion. (§ 1001.36, subds. (a), (b)(3) & (c)(1).) The maximum period of diversion is two years. (*Id.*, subd. (c)(3).) If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings. (*Id.*, subd. (d).) 'If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion' and 'the arrest upon which the diversion was based shall be deemed never to have occurred.' (*Id.*, subd. (e).)" (*Frahs, supra*, 9 Cal.5th at p. 627.)

5

A trial court has discretion to grant pretrial diversion if it finds all of the following: (1) the defendant has been diagnosed with a qualifying mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or PTSD, but excluding antisocial personality disorder, borderline personality disorder, and pedophilia; (2) the disorder was a significant factor in the commission of the charged offense; (3) in the opinion of a qualified mental health expert, defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment; (4) subject to certain exceptions related to incompetence, the defendant consents to diversion and waives his or her speedy trial rights; (5) the defendant agrees to comply with treatment as a condition of diversion; and (6) the court is satisfied that the defendant will not pose an unreasonable risk of danger to public safety if treated in the community, as defined in section 1170.18. (§ 1001.36, subd. (b); *Frahs, supra*, 9 Cal.5th at pp. 626-627.)

There was evidence in both cases that defendant had a qualifying condition, bipolar disorder. (See § 1001.36, subd. (b)(1)(A) [listing bipolar disorder as a qualifying condition].) Both probation reports note defendant reported as having this condition. The jail nurse's intake form likewise states defendant is bipolar, and that he is taking Depakote, a drug used to treat the condition. In case No. 19FE018277, defense counsel wrote to the trial court in a pretrial filing seeking an indicated sentence, that defendant "suffered from a documented mental illness at the time of the offenses," and "has a verified Axis I diagnosis of bipolar and is currently under the care of jail psychiatric services," and that he is "prescribed Depakote, a mood stabilizer used to treat Bipolar." Counsel also sought, unsuccessfully, to have defendant testify about his bipolar disorder. In case No. 19FE009012, counsel relied on defendant's bipolar disorder at sentencing.

Defendant did not request section 1001.36 diversion or a hearing on his eligibility for diversion in either case. Failure to request a right or remedy typically forfeits it on

6

appeal. " ' "[N]o procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." ' " (*In re Sheena K*. (2007) 40 Cal.4th 875, 880-881.)

Defendant claims the trial court committed prejudicial error in both cases because there is evidence he appears to meet all six criteria for diversion, and the trial court had a sua sponte duty to inquire into defendant's eligibility under section 1001.36.

Whether the trial court had a sua sponte duty to determine whether defendant was eligible for diversion depends on the meaning of section 1001.36. Our fundamental task in construing a statute is to " 'ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' " (*Martinez v. Combs* (2010) 49 Cal.4th 35, 51.) In this search for legislative intent, " '[t]he statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the [lawmakers] meant what [they] said, and the statute's plain meaning governs.' " (*Ibid*.)

Defendant's claim relies primarily upon two provisions. Subdivision (b)(1)(D) of section 1001.36 provides the following criterion for eligibility: "The defendant consents to diversion and waives the defendant's right to a speedy trial, unless a defendant has been found to be an appropriate candidate for diversion in lieu of commitment pursuant to clause (iv) of subparagraph (B) of paragraph (1) of subdivision (a) of Section 1370 and, as a result of the defendant's mental incompetence, cannot consent to diversion or give a knowing and intelligent waiver of the defendant's right to a speedy trial." According to defendant, this strongly indicates he is not required to request a section 1001.36 hearing, as such a requirement would render the consent provision superfluous. (See *City of Alhambra v. County of Los Angeles* (2012) 55 Cal.4th 707, 724 [" '[w]here reasonably possible, we avoid statutory constructions that render particular provisions superfluous or unnecessary' "].)

7

Subdivision (b)(1)(D) establishes that the decision to undergo diversion is personal to defendant unless he or she is incompetent to make the decision. Subjecting defendant's claim to forfeiture does not render this provision superfluous, as it still prevents defense counsel from going forward with diversion without the defendant's consent. We conclude subdivision (b)(1)(D) does not support placing on the trial court a sua sponte duty to inquire into a defendant's eligibility for section 1001.36 diversion.

Defendant's second argument in support of the sua sponte duty of inquiry is based on section 1001.36, subdivision (a), which states in pertinent part: "On an accusatory pleading . . . , the court may, after considering the positions of the defense and prosecution, grant pretrial diversion to a defendant . . . ." He asserts the interpretive rule that " '[w]e consider the language of the entire scheme and related statutes, harmonizing the terms when possible' " (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141), supports finding a sua sponte duty to inquire from the use of the term "may" in subdivision (a) as well as the consent requirement in subdivision (b)(1)(D).

Common principles of statutory interpretation establish that, absent evidence to the contrary, the word "may" grants permissive or discretionary authority, while in contrast the word "shall" is directive or mandatory. (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 194 [the word "shall" is ordinarily construed as mandatory, unless such a construction would imply an unreasonable legislative purpose]; *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1143, [the word "may" is ordinarily deemed permissive]; *Lo v. Lee* (2018) 24 Cal.App.5th 1065, 1071-1072 [" '[o]rdinarily, when a statute provides a court "may" do something, the statute is permissive, not mandatory, and grants the court a discretionary authority' "]; *Ajaxo, Inc. v. E*Trade Financial Corp.* (2020) 48 Cal.App.5th 129, 165 [use of word "may" gave trial court discretion to award royalties, but did not require such an award]; *Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 946 [when the

Legislature uses both the terms "shall" and "may" in the same statute, the word "shall" is construed as mandatory, not permissive].)

Nothing in the statutory scheme supports reading a mandatory duty into the use of the term "may" here. This term is used in subdivision (a) to give the trial court discretion to grant pretrial diversion to a defendant. The rule that rights not asserted are generally forfeited applies equally to the alleged failure of a court to exercise discretion. (See, e.g., *People v. Scott* (1994) 9 Cal.4th 331, 353-354 [court's exercise of discretionary sentencing choices subject to forfeiture].) This is a long-established rule, and there is no reason to conclude the statutory language justifies a departure from it. Holding that there is no sua sponte duty to inquire into a defendant's eligibility for diversion does no violence to the use of the word "may" here.

Defendant's final argument is that if the Legislature intended to require the defendant to request diversion under section 1001.36, it could have, but did not, include such a requirement in the statute. Once again, this ignores the general rule that issues not asserted are forfeited. Had the Legislature intended to require the trial court to consider sua sponte eligibility for diversion, it would have done so, as it did with the statute addressing competency to stand trial, section 1368.[2] Such a sua sponte inquiry is not mandated by section 1001.36. Defendant's failure to raise section 1001.36 eligibility in either case forfeits the claim on appeal.

---

[2] Section 1368, subdivision (a) states in pertinent part: "If, during the pendency of an action and prior to judgment, or during revocation proceedings for a violation of probation, mandatory supervision, postrelease community supervision, or parole, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent. If the defendant is not represented by counsel, the court shall appoint counsel."

9

## II

### *Ineffective Assistance*

Defendant next contends trial counsel's failure to address his eligibility for section 1001.36 diversion in both cases constituted ineffective assistance of counsel.

To establish a claim of ineffective assistance of counsel, defendant must show: (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) "resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

"When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai, supra*, 57 Cal.4th at p. 1009.)

As our Supreme Court observed, "certain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding. [Citations.] The record on appeal may not explain why counsel chose to act as he or she did. Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) The record before us poses such practical constraints and precludes us from finding ineffective assistance of counsel.

10

Although there is evidence that defendant had bipolar disorder, the record contains no examination of defendant by a mental health professional assessing the bipolar disorder and what factor it might have played in the charged offense in either case.[3] (See § 1001.36, subd. (b)(1)(B) [predicating eligibility on the mental disorder being "a significant factor in the commission of the charged offense"].) There is also no evidence as to whether defendant would consent to waive his speedy trial rights in both cases, as he would have to do in order to be eligible for diversion. We also have no evidence in this record as to whether defendant would be amenable to treatment, another requirement for diversion. (§ 1001.36, subd. (b)(1)(E).) Defendant's claim that he was likely to qualify for diversion and therefore prejudiced by the failure to raise it is mere speculation that cannot support a finding of ineffective assistance.

Based on this record, it is possible the trial counsel in both cases could have reasonably determined defendant would not be eligible for diversion. We therefore cannot conclude trial counsel was ineffective in either case. If defendant is to succeed in sustaining his burden of establishing ineffective assistance, he must do so in a habeas proceeding.

III

*Excluding Defendant's Mental Health Testimony*

Defendant claims it was an abuse of discretion and violation of due process for the trial court to exclude his testimony about his mental health condition in case No. 19FE018277.

---

[3] While the defense in case No. 19FE018277 sought to present evidence of defendant's bipolar disorder through his testimony, the trial court found the proposed testimony irrelevant, which, in Part III, *infra*, we conclude was a proper exercise of the trial court's discretion.

11

## A

### *Background*

During defendant's direct testimony, trial counsel asked if he recalled whether, at the time he entered Victor S.'s home, his thinking was "as clear as it is today?" When defendant responded, "[a]t that point I hadn't taken medication for years," the prosecutor made a relevance objection. After the trial court sustained the objection, defense counsel asked, "did you have a condition that affected the clarity of your thinking," and the trial court again sustained the prosecutor's relevance objection. Defense counsel then asked, "[o]n this occasion, were you confused or was your thinking clear?" Defendant replied, "[m]y thinking has been clear for some time. Just started taking my medication," and the prosecutor raised another relevance objection. The trial court sustained the objection, and the matter was then discussed off the record.

Trial counsel subsequently made the following summary of proceedings:

"The defense sought to introduce evidence of Mr. James's mental state at and around the time of these incidents. Mr. James would have testified that he currently is taking Depakote and that he's bipolar, that at the time, he was not on his medication. He was confused and that caused difficulty in his thinking, in his perceptions, and I believe that was relevant to his intent and to the way he perceived the homes at issue in this case.

"I don't believe expert testimony is necessary to put on evidence of one's own existing medical condition and how it relates to the clarity of one's thoughts. I was unable to introduce that evidence, and I believe it would have been . . . proper and would have explained not only Mr. James' intent but some of his conduct as well."

After the prosecutor responded, "I didn't believe this was relevant. . . . I don't believe it goes to his intent," the trial court summarized its ruling as follows:

"The problem is this: With medication, what medication means, what the affect is on any particular person, whether it would affect their intent or their mental state or their ability to stay alert. I don't know what Depakote does. For someone to be able to come

12

in and testify—use an argument that he was on Depakote, therefore he didn't have the requisite intent, there was certainly not enough evidence of that, and I'm just going to sort of analogize it to intoxication is not a defense to these crimes.

"I'm not sure that Depakote is—has that affect. I don't know anything about it. What Mr. James could effectively say is I was confused, I . . . really didn't know what I was doing. A lot going on. And there was a lot going on in his life. Out in the rain, cold, went to hospital. But to blame it on because he's off his meds, therefore didn't know he was committing burglaries or breaking into homes, there wasn't enough there.

"And I just was very weary [*sic*] about allowing the defense to use that to argue against his intent. Just not enough evidence. That's why I ruled as I did."

B

*Analysis*

Defendant claims the trial court prevented him from testifying that he had bipolar disorder, required medication for his condition, and was not taking it at the time of the charged offense. He finds this testimony had a tendency to show he lacked the necessary specific intent to commit burglary, rendering it relevant, and the trial court's ruling to the contrary was an abuse of discretion that deprived him of his due process right to a fair trial.

"Only relevant evidence is admissible at trial. [Citation.] Under Evidence Code section 210, relevant evidence is evidence 'having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' A trial court has 'considerable discretion' in determining the relevance of evidence. [Citation.] Similarly, the court has broad discretion under Evidence Code section 352 to exclude even relevant evidence if it determines the probative value of the evidence is substantially outweighed by its possible prejudicial effects. [Citation.] An appellate court reviews a court's rulings regarding relevancy and admissibility under Evidence Code section 352 for abuse of discretion. [Citation.] We will not reverse a court's ruling

13

on such matters unless it is shown ' "the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Merriman* (2014) 60 Cal.4th 1, 74.)

"Evidence of mental disease, mental defect, or mental disorder shall not be admitted to show or negate the capacity to form any mental state, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act. Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged." (§ 28, subd. (a).) Accordingly, "the jury may generally consider evidence of voluntary intoxication or mental condition in deciding whether defendant actually had the required mental states for the crime." (*People v. Steele* (2002) 27 Cal.4th 1230, 1253.)

Burglary is committed when a person enters an inhabited dwelling house with the intent to commit a felony therein. (§§ 459, 460, subd. (a).) Evidence of defendant having bipolar disorder at the time of the crime is thus potentially relevant under section 28. While defendant offered testimony as to his having bipolar disorder, being prescribed medication for it, and having failed to take it at the time he broke into Victor S.'s home, there is no evidence that he had any knowledge as to the effect of this on his mental state. This significantly limits the relevance of the excluded testimony.

" 'A lay witness may express an opinion based on his or her perception, but only where helpful to a clear understanding of the witness's testimony (Evid. Code, § 800, subd. (b)), "i.e., where the concrete observations on which the opinion is based cannot otherwise be conveyed." ' " (*People v. DeHoyos* (2013) 57 Cal.4th 79, 130.) "Matters that go beyond common experience and require particular scientific knowledge may not properly be the subject of lay opinion testimony." (*Id*. at p. 131.) "Unlike an expert opinion, a lay opinion must involve a subject that is ' "of such common knowledge that

14

men of ordinary education could reach a conclusion as intelligently as the witness." ' [Citation.]  There is no 'third category of admissible opinions provided by highly experienced, nonexpert, lay witnesses.' [Citation.]  Although a lay 'witness's experience may affect the weight of the testimony,' the witness's 'opinion testimony may rest only on common experience.' " (*People v. Fiore* (2014) 227 Cal.App.4th 1362, 1384.)

The nature and effect of his bipolar condition and the medication for it are not within general experience and therefore must be presented through expert testimony. Expert testimony on a mental health condition is a predicate to instructing the jury with CALCRIM No. 3428[4] concerning the mental impairment defense to a specific intent crime.[5]  (See *People v. Larsen* (2012) 205 Cal.App.4th 810, 824 ["expert medical opinion testimony is necessary to establish that a defendant suffered from a mental disease, mental defect, or mental disorder within the meaning of CALCRIM No. 3428, because jurors cannot make such a determination from common experience"].)

Lacking expert testimony to inform the jury of the effect of defendant's condition, the proffered testimony was no more than minimally relevant.  It was within the trial court's discretion to exclude it either as irrelevant or under Evidence Code section 352 for its potential to confuse the jury without expert testimony.[6]  Furthermore, the minimal

---

**4**　　CALCRIM No. 3428 states in pertinent part:  "You have heard evidence that the defendant may have suffered from a mental (disease[,]/ [or] defect[,]/ [or] disorder).  You may consider this evidence only for the limited purpose of deciding whether, at the time of the charged crime, the defendant acted [or failed to act] with the intent or mental state required for that crime."

**5**　　CALCRIM No. 3428 was not given to the jury.

**6**　　Although the trial court did not exclude the testimony under Evidence Code section 352, our role as an appellate court is to review the results, not the reasoning of the trial court's rulings.  (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [" '[n]o rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself

15

relevance of the testimony ensures that any error in excluding it is harmless under any standard.

"Ordinarily a criminal defendant's attempt 'to inflate garden-variety evidentiary questions into constitutional ones [will prove] unpersuasive. "As a general matter, the '[a]pplication of the ordinary rules of evidence . . . does not impermissibly infringe on a defendant's right to present a defense.' [Citations.] Although completely excluding evidence of an accused's defense theoretically could rise to this level, excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense." ' " (*People v. Thornton* (2007) 41 Cal.4th 391, 443.) For this reason, we also reject defendant's constitutional claim.

IV

*Upper Term Sentence*

Defendant's final claim specific to case No. 19FE018277 is that the matter must be remanded because the trial court failed to state its reasons when imposing the upper term. After the conclusion of briefing, section 1140 was amended in a way favorable to defendant. We requested supplemental briefing on the amended statute, and both parties agree that case must be remanded for resentencing under the amended statute.

While briefing was pending in this case, the Governor signed Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Assembly Bill 124) and Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567). Assembly Bill 124 and Senate Bill 567, both of which became effective January 1, 2022, make changes affecting trial court sentencing discretion, including the ability to impose the upper term for a conviction. (Stats. 2021, ch. 695, § 5.3 [Assembly Bill 124]; Stats. 2021, ch. 731, § 1.3 [Senate Bill 567].) Among other things, Assembly Bill 124 sets a presumption that the trial court will impose the

---

correct in law, will not be disturbed on appeal merely because given for a wrong reason' "].)

16

lower term under enumerated circumstances, such as where an offender's childhood trauma or youth were contributing factors in the offense. (Stats. 2021, ch. 695, § 5.3.) Senate Bill 567 limits the trial court's ability to impose the upper term unless certain conditions have been met. (Stats. 2021, ch. 731, § 1.3.) Under the changes enacted by Senate Bill 567, a trial court may impose a sentence exceeding the upper term only based on aggravating factors stipulated to by defendant or found beyond a reasonable doubt by the jury or the court in a bench trial, but prior convictions can be used to justify an upper term without having been submitted to the jury. (§ 1170, subd. (b)(2), (3).)

As it potentially reduces punishment for crimes, the amended section 1170 applies retroactively to cases not final on appeal unless the amended legislation contains a savings clause or some other evidence of an intent to be applied prospectively. (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303-304; *People v. Brown* (2012) 54 Cal.4th 314, 323.) Nothing in Assembly Bill 124 or Senate Bill 567 suggests legislative intent that the amendments apply prospectively only, and defendant's case is not yet final. (*People v. Vieira* (2005) 35 Cal.4th 264, 306.)

The trial court imposed a seven year four month term for the two burglary convictions, consisting of an upper term of six years in case No. 19FE018277 and a consecutive 16-month term in case No. 19FE009012. It imposed the upper term based on defendant's prior burglary convictions, the victim's vulnerability, and defendant's drug use and the possibility that the thefts from the burglaries fed his drug habit.

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, [our Supreme Court has] held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same

17

conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)  Some of the factors upon which the upper term sentence was based, defendant's drug use and the victim's vulnerability, were not found true beyond a reasonable doubt by a jury, and there is no clear indication what sentencing decisions the trial court would have made if it was bound by the new requirements under Assembly Bill 124 and Senate Bill 567.  Thus, we agree with the parties that remand is appropriate so the trial court may fully resentence defendant anew, incorporating the recent legislative changes.

In light of the remand, we need not consider defendant's other contentions regarding imposition of the upper term.

V

*Right To Testify*

Defendant makes one claim specific to case No. 19FE009012, that the trial court prevented him from making a knowing and informed waiver of his right to testify.

A

*Background*

The trial started on the morning of Thursday, August 8, 2019.  That afternoon, the prosecutor said he had only one witness for brief testimony that day and one final witness for Monday morning.  The trial court asked defense counsel if she anticipated any defense witnesses.  Counsel replied that it would only be defendant, but she was not sure if he wanted to testify.

The court told defendant:

"Mr. James, I want to inquire, you do understand that it's your personal choice, if you decide to testify or not.  I'm not going to force you to make that decision right now. I'll wait until you've had more opportunity to talk to your counsel.

"But I just want you to understand—I want to understand that you are aware that it is your personal choice.  Obviously, your counsel is going to advise you what she

18

believes is best for the case, but, ultimately, it is your personal choice whether you choose to testify or not.

"Do you understand that?"

After defendant replied that he understood, the trial court continued:

"So when we get to the conclusion of the People's case and the People rest, I will turn to Ms. Mayorga and ask if the defense has anything to present. If she says no, I'm going to assume that you have chosen not to testify.

"Is that okay?"

Defendant asked if counsel would speak with him before that. The trial court responded:

"What I'm trying to get at, if we have a 20-minute witness and the People rest, I don't want to just take a break. So you will have all weekend to talk with your attorney about that so, whatever your decision is, I don't want to have another break, unless it's a convenient time to break. That's why I'm asking you now.

"I will give you plenty of time to talk with your attorney, but if we have a 20-minute witness and we kind of know what that witness is going to say, I can't imagine that would change your mind. If you need more time at that point, I'll consider it, but, usually, by that point, I just turn to the defense without excusing the jury. And if the defense says, no, Your Honor, we don't have any evidence to present, I'm just going to assume that you've made that choice.

"Fair?"

Defendant replied, "Yes, sir."

Proceedings continued with the examination of the next prosecution witness, after which the trial recessed until the following Monday.

The following exchange took place when the trial resumed on Monday:

19

"THE COURT: So my understanding is the People have one more witness, and at this point my understanding is that the defense is not planning to present any evidence, is that correct?

"[Defense counsel]: That's correct, Your Honor.

"THE COURT: So after the close of the People's case, I'll turn to the defense and ask. And if you indicate that you are not presenting evidence, I'm going to assume, Mr. James, that you've chosen not [to] testify; is that correct?

"The DEFENDANT: Yes, Your Honor.

"THE COURT: Thank you very much.

"[Defense Counsel]: Would the Court feel comfortable taking a waiver from Mr. James at this time, just for the record?

"THE COURT: Mr. James, you do have a right to testify on your own behalf, if you choose, and you also have a right not to testify.

"Are you waiving your right to actually testify on your own behalf?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: So you are exercising your right not to testify, correct?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Thank you very much. Let's bring in the jury."

After the last prosecution witness was called and examined, the trial court asked defense counsel if she had any witnesses to call. When counsel replied that she did not, the trial court informed the jury that the presentation of evidence was over and then gave the jury instructions.

## B

### *Analysis*

Defendant contends the trial court's exchanges with him regarding the decision on whether to testify violated his constitutional right to testify. According to defendant, the trial court's statements that he would have to promptly decide whether he was going to

20

testify caused him to "essentially have a split-second following the conclusion of the prosecution's case" to decide whether to testify, rendering his waiver of that right neither knowing nor intelligent.

"A defendant has a fundamental right to testify on his own behalf." (*People v. Lancaster* (2007) 41 Cal.4th 50, 100.) "However, the right is 'not unlimited, but rather is subject to reasonable restrictions.' [Citations.] These restrictions include ' "rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." ' " (*People v. Anderson* (2012) 208 Cal.App.4th 851, 880.) The decision on whether to testify is defendants to make and cannot be overridden by counsel. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1332.) However, the right to testify does not have to be personally waived by defendant. (*People v. Johnson* (2020) 45 Cal.App.5th 123, 130.)

Contrary to defendant's argument, the trial court did not pressure defendant into a hasty decision on whether to testify. The court told defendant repeatedly that the decision on whether to testify was entirely his, and that he would be able to consult with counsel before making the decision, and that he would not have to make the decision until after the prosecution rested, giving him three days to decide. A court has the "inherent power to ensure the orderly administration of justice and control the litigation before it," a power derived from its constitutional role. (*New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1431.) That includes having defendant inform the court of his decision whether to testify in an orderly manner. The trial court's exchange with defendant regarding his decision to testify did not impermissibly interfere with his right to testify but was instead an appropriate effort to manage the trial. There was no error here.

## VI

### *People v. Dueñas*

Defendant's final contention, made in both cases, is that the trial court imposed fines, fees, and assessments without first determining his ability to pay, contrary to the rule of *Dueñas*. Defendant did not raise a *Dueñas* claim when he was sentenced. It is unnecessary for us to address this contention as we are remanding the case for resentencing, at which time defendant may make a *Dueñas* claim.

### DISPOSITION

The judgment of conviction is affirmed. The case is remanded to the trial court for a full resentencing, consistent with the legislative changes made by Assembly Bill 124 and Senate Bill 567, discussed herein. Defendant may raise a claim under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 at resentencing as well as any other statutes applicable to his case.

/s/
Robie, Acting P. J.

We concur:

/s/
Hoch, J.

/s/
Krause, J.

22